# In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――

No. 03-3366

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ERNEST NEWSOM,

*Defendant-Appellant.*

―――――――

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 03-26-CR-01 M/F—**Larry J. McKinney**, *Chief Judge.*

―――――――

ARGUED APRIL 5, 2004—DECIDED APRIL 1, 2005

―――――――

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Ernest Newsom was caught with
child pornography on his computer, including pictures of his
own daughter and his ex-girlfriend's daughter. He was
charged and found guilty of receipt, possession, and produc-
tion of child pornography. Newsom appeals from the district
court's denial of his motion to suppress evidence recovered
from his home and computer and from two sets of sentenc-
ing enhancements. We affirm the district court's denial of
his motion to suppress and the sentencing enhancements.
We order a limited remand to the district court for consider-

ation whether Newsom's sentence would be different in light of *United States v. Booker*, 125 S.Ct. 738 (2005), in keeping with the procedure established in *United States v. Paladino*, Nos. 03-2296 *et al.*, 2005 WL 435430 (7th Cir. Feb. 25, 2005). In order to allow the court to take into account the sentence that the Guidelines would advise, along with other pertinent factors, we discuss Newsom's Guidelines arguments in this opinion.

# I

From 1996 until 2001, Audry Edwards lived with Newsom at his Lawrence, Indiana, home. Edwards's daughter, Jane Doe #1, and Newsom's daughter, Jane Doe #2, also lived with the couple. In July 2001, Edwards found images of nude and partially nude children engaged in sexually explicit acts on Newsom's computer. She confronted Newsom but did not alert the police. She moved out, taking her daughter with her.

Despite Edwards's disturbing discovery, she remained in contact with Newsom. A year later, in July 2002, Edwards was watching Newsom's house while he was out of town. She looked on Newsom's computer and discovered two video clips of her daughter, Jane Doe #1, getting out of the shower with a towel wrapped around her and then dropping the towel. Edwards recognized the room Jane Doe #1 was in as her former bedroom in the house.

With the help of some neighbors, Edwards copied the video clips onto a CD and brought the disk to the Lawrence Police Department. She filed a report about the video clips and also reported finding the child pornography the previous year. Based on that information, Sergeant Miller obtained a search warrant to search Newsom's house and computer equipment. The searches turned up compromising videotapes of both Jane Doe #1 and Jane Doe #2 as well as other children; a video camera and a television that Newsom had

rigged to tape the girls; a pair of Jane Doe #1's underwear from Newsom's briefcase; and numerous images of child pornography.

On March 12, 2003, Newsom was charged by superseding indictment with one count of producing child pornography, in violation of 18 U.S.C. § 2251(a); one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and 23 counts of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2). Newsom moved to suppress the evidence seized in the search, arguing that the information on which the warrant was based was too old to furnish probable cause to search. The district court denied the motion on April 2, 2003. Newsom also waived his right to a jury trial at that time.

After a bench trial on April 9 and 10, 2003, the district court found Newsom guilty of the production and possession counts and 22 of the 23 receiving counts. The court sentenced Newsom to 324 months' imprisonment and 3 years' supervised release. Newsom appeals from the denial of his motion to suppress and challenges two specific aspects of his Guidelines sentence as well as the sentence as a whole.

## II

The Fourth Amendment permits a search of a person's home only if there is probable cause to believe that the authorities will recover the items subject to seizure at the time they execute the warrant. *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (quoting *Jones v. United States*, 362

U.S. 257, 271 (1960)). In reviewing *de novo* a magistrate's issuance of a search warrant based on probable cause, the magistrate's decision will be upheld "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Id.* at 236 (quoting *Jones*, 362 U.S. at 271). A magistrate's determination of probable cause "is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) (citations omitted). When considering whether information is stale, our circuit has held "that the age of inculpatory information is only one factor that magistrates should consider in determining whether probable cause exists, and if other factors indicate that the information is reliable the magistrate should not hesitate to issue the warrant." *Id.* at 836 (citations omitted).

The state court judge who issued the warrant here had two relevant pieces of information before him. The first was the fact that Edwards had seen pornographic images of very young children in that location a year earlier. Second, the judge knew that Edwards recently had discovered videos of her daughter, apparently taped with a hidden camera. The affidavit also stated that computers provide ample storage space for hundreds or thousands of images, that computers make it easier to make and swap images, and, at least by implication, that one could hold on to these images for long periods of time because of the immense amount of storage space provided on newer machines.

Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned. *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997)

(upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it); *United States v. Ricciardelli*, 998 F.2d 8, 12 n.4 (1st Cir. 1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); *United States v. Rabe*, 848 F.2d 994, 996 (9th Cir. 1988) (upholding warrant despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant).

In this case, although the affidavit before the judge did not explain specifically that collectors of child pornography tend to hold onto their stash for long periods of time, it was clear from the context that the police believed that Newsom probably still had the year-old images or something similar on his computer. Also, the police did not base the search warrant on the year-old pornographic images alone; they also relied on Edwards's recent discovery of the tape of her daughter. Newsom points out that the images of Jane Doe #1 were not themselves pornographic, as they "only" showed Doe #1 naked. Even so, it was reasonable for the police to regard this video clip as an ominous hint of what might be found in Newsom's home.

Edwards had seen child pornography on Newsom's computer. She also had seen videos suggesting that Newsom secretly was taping her daughter. Reading the affidavit as a whole and taking the two discoveries of Edwards together, it was reasonable for the judge to conclude that probable cause existed to believe that Newsom had child pornography in his home.

### III

Before turning to Newsom's sentencing arguments, a word about the applicable standard of review and the procedure we have adopted is in order. Newsom concedes that he never raised any argument to the effect that the Sentencing Guidelines were unconstitutional before the district court, or indeed in this court before the Supreme Court decided *Blakely v. Washington*, 124 S.Ct. 2531 (2004). In a supplemental filing lodged with this court after *Booker* was handed down, however, he urges us to remand his case for re-sentencing, with or without a finding of plain error.

Because Newsom never raised this point before the district court, we conclude (consistent with our ruling in *Paladino*) that he is subject to the plain error standard of review. He is therefore not entitled to have his sentence vacated at this point; instead, we will follow the procedure outlined in *Paladino* by ordering a limited remand to the district court, while retaining jurisdiction over the appeal, to see whether the district court is inclined to stay with the original sentence or to resentence. For the district court's guidance, we will address the particular arguments under the Sentencing Guidelines that Newsom has raised, recognizing that the Guidelines range is now advisory only.

#### *Grouping Enhancement*

Newsom first argues that the district court erred in the way it handled his counts of conviction under U.S.S.G. § 3D1.1, which sets forth rules for grouping multiple counts together for the purpose of obtaining the proper offense level. Adopting the recommendation of the Presentence Investigation Report (PSR), the court created three groups from Newsom's convictions. The first group included all the counts of receiving pornography. See U.S.S.G. § 3D1.2(d). The second group included the production and possession counts. See U.S.S.G. § 3D1.2(b). The third group was titled

"Uncharged Relevant Conduct—Production of Child Pornography," for Jane Doe #2. Newsom argues, and it appears that he is correct, that the district court relied upon uncharged conduct to make up the third group. We have held before that offense levels are not to be raised "by the inclusion of unconvicted offenses in the multiple-count grouping provision." *United States v. Dawson*, 1 F.3d 457, 463 (7th Cir. 1993). This was therefore error. The next question is whether the error made any difference to the ultimate result under the Guidelines.

In our view, the following groups reflect the proper grouping of Newsom's counts of conviction:

Group 1 includes the 22 counts of conviction for receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The Guidelines call for related charges to be grouped together, including counts sentenced pursuant to § 2G2.2(a), which these were. The adjusted offense level for this group is 30.

Group 2 covers the one count of production of child pornography, in violation of 18 U.S.C. § 2251(a). Although the Guidelines call for counts involving the same victim to be grouped, see § 3D1.2(a), which would mean the production and possession of the Jane Doe #1 pornography should be grouped together, § 2G2.1(c) states that counts sentenced under § 2G2.1 are to be excluded from grouping. Making production its own group results in an adjusted offense level of 35.

Group 3 includes the conviction for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The adjusted level for possession is 33. The Guidelines instruct that production of pornography can count as relevant conduct to possession. This accounts for the fact that Newsom produced the pornography that he possessed. See *United States v. Dawn*, 129 F.3d 878, 881-82

(7th Cir. 1997). The creation of the pornography depicting Jane Doe #1 is already accounted for, however, in the production count, which makes up Group 2. This leaves just the possession count with no other relevant conduct. In the end, however, this makes no difference, because the adjusted offense level for the group is the highest offense level of the included counts. The possession count alone has an offense level of 33, while the production of Jane Doe #2 pornography has an offense level of 31, and so even if we exclude it altogether, the group still has an adjusted level of 33.

Calculating the multiple count adjustment, pursuant to § 3D1.4, 2½ units are to be added to the greater adjusted offense level of 35 (the offense level from Group 2). The Guidelines instruct us to round up, and thus we have a total offense level of 38 (35 + 3). The district court had also come up with 38 as the adjusted offense level. Thus, any mistake in applying the Guidelines had no effect on Newsom's Guidelines range.

### *Vulnerable Victim Enhancement*

The district court added two levels to Newsom's offense level pursuant to U.S.S.G. § 3A1.1(b), which provides for an enhancement if the defendant "knew or should have known that a victim of the offense was a vulnerable victim." Application Note 2 of § 3A1.1 states that "[f]or purposes of subsection (b), 'vulnerable victim' means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."

The district court found that Jane Doe #1 was unusually vulnerable because she was asleep at the time she was filmed. The court explained that "[s]he [was] unable to express any

kind of discontent . . . . She [was] unable to resist or express any kind of objection. She [couldn't] do anything until the act [was] either underway or over." See *United States v. Plenty*, 335 F.3d 732, 735 (8th Cir. 2003) (upholding the enhancement because a sleeping burglary victim "did not have the ability to phone law enforcement, to run away, to move the location of the assault away from her children, or to fight back."); *United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000) (upholding enhancement because sleeping victim was unable to resist, cry out, express objection, or react in any way until offense was underway or complete, and that if she had been awake, the defendant likely would not have committed the offense).

We are a bit troubled by the district court's findings. It implies that any victim who surreptitiously is watched is vulnerable, and we are hesitant to assume that the Sentencing Commission designed the enhancement to be this broad. No one who is asleep or more generally who—perhaps because she is simply out in public unaware of who is focusing on her—does not know that she is being videoed or watched is able to resist or to act to protect herself. On the facts of this case, however, the district court properly applied the enhancement. The videotape admitted into evidence and viewed by the district court shows Newsom moving Jane Doe #1's underwear so as to get better shots of her genitals. Such an attempt would have been impossible had Jane Doe #1 been awake. The purpose of the vulnerable victim enhancement, which is to punish more severely those who target the helpless, is satisfied on these facts.

Before concluding, we add a few words about Newsom's overall sentence. As we noted, the result of the application of the Guidelines was a sentence of 324 months' imprisonment, or 27 years. Those who think that the idea of marginal deterrence should play some part in criminal sentences—that is, that the harshest sentences should be reserved for the most culpable behavior—might find little room left above Newsom's sentence for the child abuser who physically

harms his victim, who abuses many different children, or who in other ways inflicts greater harm on his victims and society. Compare A. Mitchell Polinsky & Steven Shavell, "The Optimal Trade-Off Between the Probability and Magnitude of Fines," 69 Am. Econ. Rev. 880 (1979); see also Tracey L. Meares, Neal Katyal, & Dan Kahan, "Updating the Study of Punishment," 56 Stan. L. Rev. 1171 (2004) (discussing, among other things, the substitution effects from one crime to another induced by very high penalty levels); Mitchell Edmund O'Neill, "Old Crimes in New Bottles: Sanctioning Cybercrime," 9 Geo. Mason L. Rev. 237, 274 (2000). The factors outlined in 18 U.S.C. § 3553(a), which now must directly inform criminal sentencing, reflect the need to take into account factors like the full nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need to afford adequate deterrence. The district judge may conclude, on remand, that these and the other parts of § 3553(a) can be satisfied by something less than the 324-month sentence derived from the Guidelines grid.


## IV

We therefore AFFIRM the judgment of conviction. We order a LIMITED REMAND to the district court for further consideration of Newsom's sentence, which should be undertaken in conformity with the procedures spelled out in *Paladino.* This court will retain jurisdiction over the appeal during the pendency of the limited remand.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-1-05