**UNITED STATES of America,**
**Plaintiff,**

v.

**Joshua McNALLY, Defendant.**

**No. 3:04cr142.**

United States District Court,
S.D. Ohio,
Western Division.

June 9, 2005.

Anthony R. Cicero, Dayton, OH, for Defendant.

Sheila Gay Lafferty, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. # 22); DECISION AND ENTRY SUSTAINING GOVERNMENT'S MOTION FOR A STATUS CONFERENCE (DOC. # 32); CONFERENCE CALL SET

RICE, District Judge.

On April 5, 2004, Special Agent Coburn ("Coburn") of the Federal Bureau of Investigation ("FBI") executed an affidavit with which he was able to obtain a warrant from Magistrate Judge Michael Merz, authorizing agents to search the Defendant's residence, an apartment located on San Rae Drive in Kettering, Ohio.[1] Coburn's affidavit was based in large measure on the information provided to him by an informant, a woman who had previously been romantically involved with the Defendant ("informant"). That search warrant was executed on April 6, 2004, and Coburn interviewed the Defendant while the latter's apartment was being searched. Based upon the evidence seized during that search and the Defendant's statements, he has been charged in the Indictment (Doc. # 18) with two counts of possessing child pornography, in violation of 18 U.S.C. § 2252A. The Defendant has filed a motion, requesting that the Court suppress the evidence seized and the statements he made when that warrant was executed. See Doc. # 22. On February 10, 2005, the Court conducted an oral and evidentiary hearing on Defendant's motion.[2] In accordance with the briefing

1. A search warrant was also executed at Defendant's studio; however, that search is not the subject of his motion, since no incriminatory evidence was seized from that location. See Transcript of February 10, 2005, Hearing (Doc. # 25) at 29.

2. In actuality, Defendant did not seek suppression of his statements with his motion, because prior to that evidentiary hearing, Defendant's counsel had been told by the Government that it would not be using any statement his client had given. During the evidentiary hearing, however, the Government indicated for the first time that it would use one of the Defendant's statements. See Transcript of February 10, 2005, Hearing (Doc. # 25) at 90–91. As a consequence, evidence concerning that statement was introduced; the parties addressed the question of the suppression of that statement in their post-hearing memoranda. Therefore, the Defendant's motion was effectively amended to include his statements.

schedule, the parties have filed their post-hearing memoranda. *See* Docs. ## 28–31. The Court now rules upon the Defendant's motion, addressing his request for suppression of the evidence which was seized from his apartment, before turning to his request to suppress his statements.

## I. Evidence Seized

The Defendant raises two arguments in support of his request that the Court suppress the evidence which was seized when the search warrant was executed at his apartment, to wit: 1) Coburn violated the rule established in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and 2) Coburn's affidavit failed to establish probable cause to believe that evidence of a crime would be found in his (Defendant's) apartment. As a means of analysis, the Court will address those issues in the above order.[3]

## A. Franks v. Delaware

■ In *Franks*, the Supreme Court addressed the issue of whether evidence would be suppressed when it was discovered as a result of the execution of a search warrant which had been obtained with an affidavit that contained material falsehoods. At the conclusion of its opinion therein, the Supreme Court summarized its holding:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

438 U.S. at 171–72, 98 S.Ct. 2674 (footnote omitted). *See also, United States v. Wright*, 131 Fed.Appx. 471, 2005 WL 1027530 (6th Cir.2005) (applying the princi-

---

**3.** Plaintiff states in his motion (Doc. # 22 at 1) and in his post-hearing memorandum (Doc. # 28 at 1) that the search warrant was overly broad. However, he does not explain why that warrant was so. It bears emphasis that the remedy for an overly broad warrant is to sever the overly broad portions of the warrant from those portions that are sufficiently particular, rather than to suppress all the evidence seized under the warrant. *See e. g.,*

*United States v. Ford*, 184 F.3d 566, 578 (6th Cir.1999), *cert. denied*, 528 U.S. 1161, 120 S.Ct. 1175, 145 L.Ed.2d 1083 (2000); *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir.), *cert. denied*, 502 U.S. 1008, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991). Therefore, since the Defendant has declined to develop his argument concerning overbreadth, the Court is compelled to reject it.

ples announced by the Supreme Court in *Franks* while holding that the District Court had erred when it struck more than the false aspect of one statement in an affidavit). Herein, the Defendant failed to make the requisite initial showing with his motion; therefore, the Court rejects his contention that the evidence seized from his apartment must be suppressed in accordance with *Franks*. However, even if he had made such a preliminary showing, the Court would, for the reasons which follow, decline to suppress the evidence discovered when his apartment was searched, since it concludes that there was not a violation of the principles discussed in the Supreme Court decision.

In ¶ 14 of his affidavit, Coburn states that Defendant's relationship with Megan Woods, the individual who provided Coburn with the information contained in his affidavit, ended in February, 2004, when he strangled and struck her. The Defendant argues that the statements that he strangled and struck her were false and that Coburn exhibited a reckless disregard for the truth by including them in his affidavit. Based upon the testimony of Larry Tobias, an officer in the Kettering Police Department, the Court concludes that the statements that the Defendant had strangled and struck Woods were indeed false. The Court cannot, however, conclude that those statements constituted deliberate falsehoods or a reckless disregard for the truth. Defendant argues that Coburn demonstrated a reckless disregard for the truth thereby, since a more thorough investigation would have led him to the Kettering Police Department which would have disabused him of the notion that he (Defendant) had engaged in such violent activity. This Court cannot agree. At most, Coburn's alleged shortcoming in that regard demonstrates that he was negligent. It bears emphasis that there is no evidence that Coburn had even an inkling that his informant had been untruthful when he executed his affidavit. Therefore, the failure to conduct a more thorough investigation did not manifest a reckless disregard for the truth.

Moreover, even if Coburn had demonstrated such a disregard for the truth, which he did not, excising his statements that the Defendant had strangled and struck the informant would have strengthened probable cause, rather than detracted from it. The Court will assume for sake of argument that Judge Merz relied marginally upon the statements that Defendant had acted violently, when that judicial officer found that there existed probable cause to believe that Defendant possessed child pornography and, that, therefore, the statements provided some support to that finding. However, by including those statements in his affidavit, Coburn significantly increased the risk that Judge Merz would not find that probable cause existed, because the statements that Defendant had strangled and struck the person who had supplied most of the information in that affidavit showed that revenge could have motivated her to lie.

Accordingly, the Court rejects the Defendant's argument that it must suppress the evidence discovered in his apartment, because of a violation of *Franks*.

## B. *Probable Cause*

Alternatively, Defendant argues that the Court must suppress the evidence seized from his apartment, because Coburn's affidavit failed to establish probable cause to believe that evidence of child pornography would be found therein. As an initial matter, the Court will set forth the standards that a court must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed, because the supporting affidavit did not establish the existence of probable cause, following which it will turn to the

parties' arguments concerning the existence of probable cause in this prosecution.

In *United States v. Smith,* 182 F.3d 473 (6th Cir.1999), the Sixth Circuit reviewed those fundamental principles:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993).

*Id.* at 476–77. In *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In *Gates,* the Supreme Court noted that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. When determining whether the affidavits established the existence of probable cause to believe that contraband or evidence of criminal activity would be found at the places to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998), *cert. denied,* 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). Of course, this Court also must give great deference to the determination of probable cause made by Judge Merz who issued the search warrant. *United States v. Allen,* 211 F.3d 970 (6th Cir.) (*en banc*), *cert. denied,* 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000); *United States v. Akram,* 165 F.3d 452, 456 (6th Cir.1999). *See also, United States v. Graham,* 275 F.3d 490, 501 (6th Cir.2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrarily made). Where, as in the present case, oral testimony was not presented to the magistrate who issued the search warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit. *See e. g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir.1999); *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir. 1999); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996).

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the

Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. *See also, United States v. Czuprynski,* 46 F.3d 560 (6th Cir.1995) (*en banc* ). The *Leon* Court also held that the good faith exception to the exclusionary rule would not apply under the following circumstances, to wit: 1) when the search warrant was obtained in violation of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); 2) when the issuing magistrate has failed to act in a neutral and detached fashion; 3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) when the warrant is so facially deficient (i.e., it fails to describe the particular place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid. 468 U.S. at 923, 104 S.Ct. 3405. *See also, Van Shutters, supra; United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993).

■ The Defendant initially argues that Coburn's affidavit failed to establish probable cause, because the information set forth therein was stale. Since the Defendant and the informant had ceased their relationship approximately two months before Coburn executed his affidavit, she could not have seen child pornography in Defendant's apartment for that period of time or, perhaps, even longer. Nevertheless, the Court cannot agree that this rendered the information therein stale. The Sixth Circuit has held that the purpose of staleness test is not to set an arbitrary time limitation; rather, in determining whether information in an affidavit is stale, a court must consider a number of factors, including the character of the crime. The Courts of Appeals considering the question have concluded that information far more than two months old does not render stale an affidavit executed to obtain warrant to search for child pornography, because those who possess such pornography tend to retain it. For instance, in *United States v. Newsom,* 402 F.3d 780 (7th Cir.2005), the Seventh Circuit rejected the argument that an affidavit in support of a search warrant failed to establish probable cause, because an informant's statement that he had seen child pornography on the defendant's computer a year earlier rendered the affidavit stale, writing:

> Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned. *United States v. Lacy,* 119 F.3d 742, 745 (9th Cir.1997) (upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *United States v. Harvey,* 2 F.3d 1318, 1322–23 (3d Cir.1993) (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it); *United States v. Ricciardelli,* 998 F.2d 8, 12 n. 4 (1st Cir.1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); *United States v. Rabe,* 848 F.2d 994, 996 (9th Cir.1988) (upholding warrant despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant).

*Id.* at 783. Based upon *Newsom* and the decisions cited therein, this Court concludes Coburn's affidavit was not stale, even though the Defendant and the informant had ended their relationship some

two months before Coburn executed that affidavit.

■ In addition, the Court concludes that this affidavit established probable cause to believe that child pornography would be found in Defendant's apartment. Therein, Coburn set forth what the informant had told him, to wit: that she and the Defendant had been romantically involved for a period of six months; that their relationship had ended the preceding February; that she had spent a lot of time at his apartment during their relationship; that the Defendant had a large collection of pornography; that the informant had seen an electronic file folder on Defendant's computer, in his pornography folder, entitled "child kiddie;" that the "child kiddie" file folder was the only one on his computer which the informant found to be locked; that in his bedroom she had observed a picture of a nude, young girl, who appeared to be a minor; that she had seen numerous other pictures of teenage girls posing in the nude and in sexual situations; that the Defendant had animated videos which featured young girls in their middle school years; and that, during their relationship, he had purchased a number of "school girl outfits," which he wanted the informant to wear.

Accordingly, the Court rejects the Defendant's argument that Coburn's affidavit failed to establish probable cause to believe that child pornography would be found in his apartment.

## II. Statements

■ Defendant was not at his apartment when officers arrived to execute the search warrant. As a consequence, several telephone calls were made to him by FBI agents, advising him that he needed to come home because the agents had broken into his apartment in order to execute a search warrant. As a result, Defendant returned to San Rae Drive and was met by Coburn and another agent of the FBI outside the apartment. Coburn asked him questions about his use of the internet and computers. Before questioning Defendant, however, Coburn did not read him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In his post-hearing memorandum (Doc. # 28), Defendant argues that, as a consequence, the Court must suppress his statements, since he was in custody when that questioning occurred. For reasons which follow, the Court concludes that the Defendant was not in custody and that, therefore, the failure to provide *Miranda* warnings before questioning him does not serve as the basis for suppressing his answers to those questions.[4]

In *Miranda v. Arizona*, the Supreme Court announced a prophylactic rule requiring that a suspect be provided with certain warnings before being subjected to a custodial interrogation. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into

---

**4.** The Defendant also argues that the Court must suppress his statements under what he refers to as the "penalty" exception. *See* Doc. # 28 at 10. In *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), a decision upon which Defendant relies, the Supreme Court concluded that, although it would violate the Fifth Amendment rights of a probationer to revoke his probation because he had asserted his Fifth Amendment right to remain silent, Murphy's rights had not been so violated, since he had failed to assert his right against self-incrimination. Similarly, herein, there is no evidence that a penalty would have been imposed upon the Defendant if he had refused to answer Coburn's questions; nor is there any indication that he ever invoked his Fifth Amendment right to remain silent. Consequently, the Court rejects the Defendant's argument that his statements must be suppressed under the penalty exception.

custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. 1602. *See also, Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Herein, the Defendant was questioned; therefore, the parties focus their arguments on whether he was in custody when that questioning occurred. In determining whether an individual was in custody for purposes of *Miranda* warnings, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason, supra,* 429 U.S. at 495, 97 S.Ct. 711). *See also, Stansbury,* 511 U.S. at 322, 114 S.Ct. 1526. As the United States Supreme Court has instructed, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). *Accord, United States v. Crossley,* 224 F.3d 847, 861 (6th Cir.2000).

In *United States v. Mahan,* 190 F.3d 416 (6th Cir.1999), the Sixth Circuit restated familiar principles that must be applied to ascertain whether an individual was in custody when interrogated:

> For an individual to be "in custody," there must be "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Thompson [v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) ] (citation and internal quotation omitted). In determining whether a suspect is "in custody" for purposes of applying the *Miranda* doctrine, "the only relevant inquiry is how a reasonable man in the suspect's position would have under-

stood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). *See also Thompson,* 516 U.S. at 112, 116 S.Ct. 457 (stating that the custody determination hinges upon whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave").

*Id.* at 421. In *United States v. Salvo,* 133 F.3d 943, 948 (6th Cir.), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1805, 140 L.Ed.2d 943 (1998), the Sixth Circuit explained:

> The Supreme Court has distinguished between "custodial interrogation" and the mere questioning of a suspect in a "coercive environment":
>
> > [A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.

[*Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) ]. *See also, United States v. Phillip,* 948 F.2d 241, 247 (6th Cir.1991), *cert. denied,* 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992) ("Coercive environments not rising to the level of formal arrest ... do not constitute custody within the meaning of *Miranda.*"); *United States v. Knox,* 839 F.2d 285, 291–292 (6th Cir.1988), *cert. denied,* 490

U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989).

*Id.* at 948. In *United States v. Ozuna,* 170 F.3d 654 (6th Cir.1999), the Sixth Circuit stressed that, since an objective standard must be applied to ascertain whether the defendant was in custody, the subjective beliefs of the defendant and/or the interrogating officer are not dispositive. *Id.* at 658.

In *United States v. Lawrence,* 1989 WL 153161 (6th Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990), the Sixth Circuit held that when a defendant seeks to suppress his statements on the basis that he was not given *Miranda* warnings, he has the burden of proving by the preponderance of the evidence that he was entitled to those warnings, because he was subjected to a custodial interrogation. *Accord, United States v. Davis,* 792 F.2d 1299, 1309 (5th Cir.), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Charles,* 738 F.2d 686, 692 (5th Cir.1984).

Herein, Coburn met the Defendant on the street outside the latter's apartment when he had returned there. Coburn asked him if he would be willing to answer some questions about his use of computers and the internet, and the Defendant agreed. That questioning occurred inside Coburn's vehicle which was parked on a public street, outside of Defendant's residence.[5] There was no evidence that he was arrested, detained, placed in handcuffs or otherwise retrained before, during or after that questioning. Indeed, the Defendant was not arrested until about four months after the search warrant had been executed at his apartment and Coburn had questioned him. Under the foregoing circumstances, the Court concludes that Defendant was not in custody when Coburn questioned him. In *United States v. Saa-*

*deh,* 61 F.3d 510 (7th Cir.1995), *cert. denied,* 516 U.S. 990, 116 S.Ct. 521, 133 L.Ed.2d 428 (1995), the Sixth Circuit concluded that a suspect who was detained during the execution of a search warrant had not been subjected to a restraint on his freedom of movement to a degree associated with a formal arrest and that, therefore, he was not in custody under *Miranda.* *See also, Berkemer, supra,* (holding that defendant was not in custody under *Miranda* when detained by the side of the road as a result of a traffic stop).

Accordingly, the Court declines to suppress the Defendant's statements.

Based upon the foregoing, the Court overrules the Defendant Motion to Suppress Evidence (Doc. # 22).

The Government has filed a motion, requesting that the Court convene a status conference. *See* Doc. # 32. The Court sustains that motion and schedules a telephone conference call on Monday, June 13, 2005, at 8:45 a.m., for the purpose of selecting a trial date for this prosecution.

---

**5.** Coburn explained the questioning could not occur in Defendant's apartment, since it was rather small and agents were in every room conducting the search.