COURT OF APPEALS OF VIRGINIA

Present:   Judges Haley, Petty and Powell
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 1421-08-2                JUDGE WILLIAM G. PETTY
                                            DECEMBER 8, 2008
MICHEAL J. CONYNGHAM

FROM THE CIRCUIT COURT OF NEW KENT COUNTY
Thomas B. Hoover, Judge

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

Charles A. Gavin (Cawthorn, Picard & Rowe, P.C., on brief), for
appellee.

A grand jury indicted Michael J. Conyngham for thirty counts of possession of child

pornography and four counts of distribution of child pornography.  Conyngham successfully

moved to suppress the evidence seized from his home, and the Commonwealth now appeals the

trial court's suppression order pursuant to Code § 19.2-398.  For the reasons stated below, we

affirm the trial court's decision.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below,

and grant to it all reasonable inferences fairly deducible from the evidence.  Ragland v.

Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993).  That evidence establishes

that the National Center for Missing and Exploited Children (NCMEC) received a "cybertip," or

complaint of suspected child pornography on the internet, from Yahoo on November 13, 2003.  The

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

tip indicated that eight suspected child pornography images had been posted to one of Yahoo's group websites. The cybertip also identified the IP address of a computer associated with the Yahoo account. NCMEC identified the owner of the IP address as Access Technology, Inc., a Richmond-based Internet Services Provider (ISP). Because the ISP was located in Virginia, NCMEC forwarded their investigation files to the Bedford County Sheriff's Office (Bedford), which served as the Virginia Internet Crimes Against Children Task Force during the relevant time.

At that time, Bedford operated as a clearinghouse for all of the cybertips generated in Virginia and West Virginia under a federal grant. Because Bedford was short-staffed, no one began investigating this tip until August 9, 2005—almost two years after it was received. Investigator Rodney Thompson determined that the account was registered to Mike France of Mountain Top, Pennsylvania, with a credit card on the account that belonged to Michael Conyngham. The credit card billing address was on Laburnum Avenue in Richmond, Virginia. From those leads, Investigator Thompson searched for more information on Michael Conyngham in Virginia and found a residential address in New Kent, Virginia. Investigator Thompson did not, however, know whether Conyngham actually lived at that residence.

Investigator Thompson explained at the suppression hearing that there was some information in the cybertip that was impossible to verify. First, the investigator explained that there was "no way to tell . . . where the actual uploading [of the pornographic images] took place." Instead, the IP address referenced in the cybertip and in Investigator Thompson's subsequent report was "simply the IP address that was used when the [Yahoo] account was opened in July of 2002." Investigator Thompson also testified that the "incident date" of November 13, 2003 was "not verified," meaning that the "actual date of the alleged uploading" could not be determined. As part of his investigation, Investigator Thompson prepared a Bedford County Sheriff's Office Incident Report, dated August 9, 2005. This document refers to two different dates as both the "incident

date" and the date on which Investigator Thompson received the cybertip from Yahoo. The "incident date" of November 13, 2003 is listed on the first and second pages of the report. Investigator Thompson indicated on the report itself that the November 2003 date was "not verified." However, in the narrative portion of the incident report, Investigator Thompson stated, "On 2005-08-09, I received a Cybertipline complaint . . . ."[1]

After identifying Conyngham as a suspect, Investigator Thompson contacted Sergeant Thatcher with the New Kent Sheriff's Office (New Kent). The officers discussed the case, and Sergeant Thatcher stated that he was interested in investigating the case further. Accordingly, Investigator Thompson mailed the "Bedford County Sheriff's Office case report, the cybertip itself . . . a copy of the Yahoo court order return [and] the Yahoo court order itself, any [other investigative materials obtained from databases] . . ., [and] an electronic copy of a CD that contained the images of the child pornography involved in the case." The parties stipulated that "Investigator Thompson stated he probably did tell Sergeant Thatcher that the cybertip was from the November 2003 time period" based on the attorneys' recollections of a pretrial phone conference.

The case was then assigned to Detective Hamby. He prepared a New Kent Sheriff's Office police report for this case on November 29, 2005, the date on which New Kent received the case from Bedford. Detective Hamby testified that he "thoroughly" reviewed the documents in the Bedford case file, but he did not realize that the cybertip was dated November 13, 2003 until after the search warrant had been served and the motion to suppress had been filed. Detective Hamby also stated that "[t]he only investigation that I did [prior to applying for the search warrant] was verify that the address that I was given was in fact belonging to Mr. Conyngham." The detective verified that Conyngham owned the property with the online

---

[1] Investigator Thompson clarified that there was only one cybertip involved in this case.

- 3 -

tax map for New Kent County and, after obtaining a picture of the residence from another database, drove by the residence "to verify the shutters were still the same color, [the house had the] same type of roof, same color house." The detective did not, however, verify whether Conyngham received mail at the residence nor obtain any other information indicating that Conyngham actually lived in the residence. Further, Detective Hamby had no information indicating that there was a computer in the residence. Instead, he explained that:

> In my conversations with Investigator Thompson, he had made mention of an address on South Laburnum Avenue, the information that I believed to be a business. I felt that [Conyngham] was uploading the images from his work address, and then I believe[d] that he would then ultimately be able to upload them from home.

The detective suspected that Conyngham had a computer in his home because he was "personally" unaware "of anybody . . . that doesn't have a computer."

Detective Hamby set forth the following "material facts constituting probable cause" in his warrant application:

> *On 08/09/05*, Investigator Rodney L. Thompson with the Bedford County Sheriff's Office received a complaint from the National Center for Missing and Exploited Children in reference to Cybertip # 167186 where Internet Service Provider Yahoo! Inc. had reported an individual using screen name "greencork 2002" had uploaded child pornography through a Yahoo! Group . . . on their service. This information generated a report to NCMEC in which [sic] sent the Cybertip and images to Bedford County Sheriff's Office via Virtual Private Network (VPN). Two of the images have been confirmed by the National Center for Missing and Exploited Children as belonging to [specific children]. Court Orders to Yahoo! Inc. indicated that Yahoo! ID "greencork202" belonged to Mike France of Pennsylvania. This information is user supplied. An investigation led to the identity of Michael J. Conyngham through Yahoo! Account Records. This subject resides in New Kent, Virginia. Bedford County Sheriff's Office and Operation Blue Ridge Thunder are the Internet Crimes Against Children Task Force for the states of Virginia and West Virginia.

- 4 -

They are responsible for investigating crimes involving the Internet where the Sexual Exploitation of Children has occurred.

(Emphasis added).

As indicated above, when Detective Hamby applied for the warrant on December 2, 2005, he stated in his affidavit that Bedford received the cybertip on August 9, 2005. The detective testified that he had no reason to believe that anything in the affidavit was false at the time that he made the affidavit and he did not knowingly mislead the magistrate. He also testified that he could not recall whether he orally provided any other information to the magistrate other than the information in the affidavit. Finally, Detective Hamby listed Investigator Thompson as an informant and included Investigator Thompson's professional biography as part of the affidavit.

Based on the evidence adduced at the suppression hearing, the trial court found that, while the officers involved were not dishonest, this case involved "sloppy police work." The court explained:

> This is extremely sloppy police work starting in Bedford County when the police officer who prepares . . . his incident report . . . types in the date of the offense . . . [as] November 13, 2003, the second line of his report, but then in the first line of his narrative on page 2 he puts in the false statement of on August 9 of 2005 he received a cyber line complaint . . . . He goes on in the fifth line down that he mentions in his report the incident date not validated was November 13, 2003, and he sends that report on to New Kent.

The trial court also noted that Detective Hamby was inexperienced in child pornography prosecutions and found it inexplicable as to why neither he nor Sergeant Thatcher "pick[ed] up on" the 2003 date. The date given to the magistrate was "false." Also absent from the affidavit is any indication that child pornography collectors tend to keep their collections for a period of time. Further, the court found that the warrant was "incomplete" in that it did not state any connection between the crime and Conyngham's New Kent residence.

Following this discussion the trial court "specifically [found] that this warrant . . . does constitute a reckless disregard for the facts, of the material facts, that the magistrate was misled with incorrect information or bear-bones [sic] conclusions without any supporting information and that . . . the <u>Leon</u> exception does not apply."

## II. ANALYSIS

Conceding the affidavit contained insufficient probable case to support a warrant, the Commonwealth argues on appeal that the trial court erred in failing to apply the good faith exception to the exclusionary rule set forth in <u>United States v. Leon</u>, 468 U.S. 897 (1984). The Commonwealth contends that the good faith exception should be applied in this case because the record does not support the trial court's factual finding that the officers seeking the warrant acted in reckless disregard of the truth.[2] For the reasons explained below, we disagree.

---

[2] There are a total of four circumstances in which the good faith exception to the exclusionary rule does not apply:

> "(1) Where the magistrate was misled by information in the affidavit *which the affiant knew was false or should have known was false*, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

<u>Colaw v. Commonwealth</u>, 32 Va. App. 806, 811, 531 S.E.2d 31, 33 (2000) (quoting <u>Atkins v. Commonwealth</u>, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990)) (emphasis added).
In this case, we recognize that Conyngham asserted, and the trial court found, that the third situation – that of a bare-bones affidavit—also existed in this case. <u>See generally</u> <u>Anzualda v. Commonwealth</u>, 44 Va. App. 764, 607 S.E.2d 749 (2005) (*en banc*). The Commonwealth also challenges this finding on appeal. However, because we affirm the trial court's determination that the warrant was based on misleading and incomplete information, we need not address this alternative ground for the trial court's holding. <u>See</u> <u>Boone v. C. Arthur Weaver Co.</u>, 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988) (declining to address alternative theories after affirming the trial court on a dispositive issue).

- 6 -

We begin by noting that, although "'[w]e are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them,' . . . we review *de novo* the trial court's application of legal standards . . . to the particular facts of this case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (*en banc*) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)). Whether an officer acted in reckless disregard for the truth is a question of fact. E.g., United States v. Jones, 913 F.2d 174, 176 (4th Cir. 1990) (whether a warrant affiant's statements were "deliberately false or [made] in reckless disregard for the truth" is a question of fact); accord United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988). However, "whether misstatements and omissions are material to the finding of probable cause is subject to *de novo* review." Dozier, 844 F.2d at 705.

When law enforcement officers conduct a search pursuant to a warrant that is later determined to be invalid, the evidence will be excluded "'only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.'" Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998) (quoting Leon, 468 U.S. at 918). In cases "[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000).

However, "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Leon, 468 U.S. at 923 (citing Franks v. Delaware, 438 U.S. 154 (1978)). Accordingly, both the omission or inaccuracy of facts relevant to the probable cause determination and the inclusion of inaccurate

facts in the warrant affidavit will lead to the suppression of evidence when the omission or inaccurate statement was "designed to mislead, or . . . made in reckless disregard of whether [it] would mislead" the magistrate.  See United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990).  The refusal to apply the good faith exception in this situation is consistent with the policy behind the exclusionary rule:  it "is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  Leon, 468 U.S. at 916.

Here, the trial court found that Detective Hamby, albeit unintentionally, misled the magistrate as to material facts.  First, the detective listed the wrong incident date.  Second, the detective failed to tell the magistrate that his investigation led him to believe that the images were uploaded from a location he believed to be Conyngham's work address on South Laburnum Avenue in Richmond.  The evidence supports the trial court's factual finding that Detective Hamby acted recklessly.

First, when Detective Hamby included the false date, he converted a tip that had, for whatever reason, sat uninvestigated for two years to a tip that was only four months old.  That difference in time, in combination with the lack of any information in the affidavit or in the executing officers' knowledge to explain why probable cause existed given the passage of time, was material to the magistrate's evaluation of probable cause.  Cf. Sowers v. Commonwealth, 49 Va. App. 588, 601, 643 S.E.2d 506, 512 (2007) (The date of the incident may be material to the issuance of a search warrant because "[p]robable cause may be diminished by the passage of time between when the supporting facts occurred and when the police issue the affidavit.").  Further, as the trial court emphasized in its findings from the bench, the correct incident date was clearly typed on the first and second pages of the Bedford incident report.  Thus, the correct information was readily available to the detective – despite his testimony that he "thoroughly" reviewed the Bedford case file, he missed the correct date.  Moreover, Investigator Thompson's

use of two different dates in his report should have put the detective on notice that he needed to determine the correct date.

Second, the officers failed to disclose that there was no way to determine the location of the computer from which the images had been uploaded to the Yahoo group website. The investigation established that the ISP provider was located in Richmond. In fact, Detective Hamby testified that he suspected Conyngham was uploading the images from what the detective believed to be his work address on South Laburnum Avenue in the City of Richmond. He had no basis for alleging that contraband was located in Conyngham's home other than his subjective belief that Conyngham "was uploading the images from his work address" and would also "upload them from home." Further, the detective had no basis to believe that there was a computer in Conyngham's residence other than his opinion that everyone has a home computer. The location of the computer from which the material was uploaded is material to the determination of probable cause to search. Cf. Janis v. Commonwealth, 22 Va. App. 646, 653, 472 S.E.2d 649, 653 (1996) (Some nexus between the place to be searched and criminal activity must exist to give rise to probable cause.); see also Anzualda v. Commonwealth, 44 Va. App. 764, 785, 607 S.E.2d 749, 760 (2005) (*en banc*). Indeed, the omission of facts "'clearly critical' to assessing the legality of a search" is per se reckless. United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996) (quoting Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1993)).

### III. CONCLUSION

While the good faith exception expressed in Leon generally allows a police officer to rely on a probable cause determination made by a magistrate, "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." Reilly, 76 F.3d at 1280. Instead, "[s]uppression [is] an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known

- 9 -

was false except for his reckless disregard of the truth." <u>Leon</u>, 468 U.S. at 923.  Here, the trial court determined that "sloppy" and reckless police work resulted in both a misstatement and an omission of material facts in the affidavit.  It thus concluded that the magistrate was misled as to the existence of probable cause.  After examining this record, as set forth above, we cannot say that the trial court's conclusion was plainly wrong or unsupported by the evidence.  Accordingly, we affirm the trial court's decision.

<u>Affirmed.</u>

Haley, J., dissenting,

I believe the majority is correct that there was not sufficient probable cause in the affidavit to support the magistrate's issuance of a warrant for the search of Conyngham's residence. However, I disagree with the majority's failure to apply the good faith exception of United States v. Leon, 468 U.S. 897 (1984), to the facts of this case. Because of the nature of the criminal conduct alleged in the affidavit, and known by the executing officer from the documentation forwarded from Bedford County, I believe the police officers' mistake as to the date of the original complaint was immaterial for purposes of Leon analysis. Thus, I respectfully dissent.

In Leon, the United States Supreme Court modified the Fourth Amendment exclusionary rule so that the rule would not exclude evidence obtained by police officers in good faith reliance upon a search warrant issued by a neutral magistrate but ultimately determined to be without probable cause. Id. at 926. Leon recognized a further exception to the good faith exception for cases in which police officers include deliberate or reckless misstatements of fact in the search warrant affidavit. "Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. at 923 (citing Franks v. Delaware, 438 U.S. 154, 156 (1978)).

"[T]he Court expressly left untouched the doctrine of Franks v. Delaware. It is still true, therefore, that a warrant issued upon a facially sufficient affidavit is invalid if based upon knowingly or recklessly made falsehoods." 1 Wayne R. LaFave, Search and Seizure § 1.3(f) (4th ed. 2004) (discussing Leon).

The majority relies on this principle to justify today's decision. But this principle, announced in Franks and maintained in Leon, requires that evidence only be suppressed if the

deliberate or reckless false statement in the search warrant affidavit is material to the question of probable cause. See Gregory v. Commonwealth, 46 Va. App. 683, 621 S.E.2d 162 (2005). To accept the trial court's factual finding that the officers in this case acted recklessly with regard to the date of the complaint and engaged in "sloppy police work" is not, therefore, the end of our inquiry. Before evidence may be suppressed for this reason, the officers' reckless statement regarding the date must be the fact that renders the search warrant defective for probable cause purposes.

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Franks, 438 U.S. at 156. The majority states, correctly, that we review *de novo* this conclusion of the trial court that the false statement in the affidavit in support of the search warrant was material to the finding of probable cause. United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988).

The majority concludes that the officers' recklessness as to the date was material because probable cause may diminish with the passage of time. See discussion, supra, at 8. However, "[t]here is no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant." Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000). "'Rather we must look to all the facts and circumstances of the case, *including the nature of the unlawful activity alleged*, the length of the activity, and the nature of the property to be seized.'" Perez v. Commonwealth, 25 Va. App. 137, 142, 486 S.E.2d 578, 581 (1997) (quoting United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984)) (emphasis added).

- 12 -

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

Andresen v. State, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975).

In this case, the unlawful activity alleged was the storage on Conyngham's computer of child pornography. "Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned." United States v. Newsom, 402 F.3d 780, 783 (7th Cir. 2005). See also United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002) (finding there was probable cause for search warrant for child pornography despite 91-day delay); United States v. Hay, 231 F.3d 630, 636 (9th Cir. 2000) (finding there was probable cause for search warrant for child pornography despite 6-month delay); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) ("the nature of the crime, as set forth in this affidavit, provided 'good reason[]' to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later"); People v. Russo, 487 N.W.2d 698 (Mich. 1992) (finding there was probable cause for search warrant for child pornography six and a half years after child pornography was last seen at the defendant's home).

Detective Hamby testified that he had previously worked on cases involving images that remained on computers, images that were "several years old." Given the character of the evidence for which the police were searching, I do not believe the erroneous statement as to the date of the original complaint in the affidavit is material to a Leon good faith analysis.

The majority also argues, persuasively, that the warrant application in this case did not create a substantial basis for probable cause that computer images of child pornography or even a computer were located at Conyngham's house. Nevertheless, our decision in Anzualda v. Commonwealth, 44 Va. App. 764, 607 S.E.2d 749 (2005) (*en banc*), suggests that the good faith exception should still apply. In Anzualda, the search warrant affidavit failed to establish a sufficient connection between the pistol the police were looking for and the defendant's house. "Noticeably absent from this affidavit are any facts that would have permitted the magistrate to infer not only that Anzualda had a pistol, but that he was keeping that pistol at his home." Id. at 777, 607 S.E.2d at 755. Nevertheless, a majority of this Court, in distinguishing the facts of Anzualda from Janis v. Commonwealth, 22 Va. App. 646, 472 S.E.2dd 649 (1996), explained why the good faith exception applied despite the tenuous relationship between the items sought and the place to be searched.

> In Janis, then, we did not hold that the failure to establish a sufficient nexus between the item sought and the premises to be searched automatically precluded application of the good faith exception. Rather, we held that, where the underlying affidavit failed to provide *any* connection whatsoever between the alleged criminal activity and the premises to be searched, that affidavit was so lacking in indicia of probable cause that a reasonable police officer could not have harbored an objectively reasonable belief as to the validity of the warrant.
>
> Janis, therefore, is factually distinguishable from the present case. Unlike the affidavit in Janis, which contained *no* information connecting the criminal activity to the premises to be searched, the affidavit here did establish *a* nexus (albeit an insufficient nexus for a finding of probable cause) between the pistol and the premises to be searched. Specifically, the affidavit at issue in this case states that Anzualda was "known to [the confidential informant] as residing at the place to be searched," and additionally indicated that the address to be searched "is occupied by Delio Anzualda and family." The affidavit also indicates that a murder suspect had traded a pistol to Anzualda in exchange for marijuana. It is therefore apparent on the face of the affidavit that the premises were to be searched because Anzualda, the person presumably in possession of the pistol, resided there. Accordingly, the vital link

- 14 -

> that was missing in <u>Janis</u> is present here: the affidavit clearly
> connected Anzualda to the pistol and connected Anzualda to the
> place to be searched.

<u>Anzualda</u>, 44 Va. App. at 785-86, 607 S.E.2d at 759-60. This warrant application in this case contained a similar connection. Conyngham's credit card information on the "Mike France" Yahoo account connected Conyngham to the alleged child pornography. The DMV and tax records connected Conyngham to the place to be searched. While this connection was not enough for probable cause, <u>Anzualda</u> clearly mandates the application of the good faith exception to the search of Conyngham's house.

For these reasons, I would reverse the ruling of the trial court granting Conyngham's motion to suppress and remand the case for further proceedings.