In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3708

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARY PRIDEAUX-WENTZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 63—**Barbara B. Crabb,** *Chief Judge.*

ARGUED APRIL 7, 2008—DECIDED SEPTEMBER 12, 2008

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Gary Prideaux-Wentz was convicted of possessing child pornography based on evidence obtained during a search of his home. The search warrant was supported by an FBI agent's affidavit, which described sixty-nine images of child pornography/erotica uploaded by Prideaux-Wentz onto eight Yahoo! e-groups, and the affidavit also contained expert information regarding general characteristics of child

pornography collectors. On appeal, Prideaux-Wentz argues that the search warrant failed to establish probable cause because there is no information specific to him in the affidavit but only boilerplate statements about child pornography collectors. Additionally, he contends that the information regarding the uploaded pictures was stale and therefore inadequate to establish probable cause for the search. We find that the evidence relied on in the warrant affidavit was stale, but we affirm the denial of the motion to suppress because the agent acted in good faith in relying on the search warrant.

## I.  BACKGROUND

On January 31, 2006, FBI Special Agent Steven Paulson obtained a federal search warrant for the New Glarius, Wisconsin residence of the defendant, Gary Prideaux-Wentz. In requesting the search warrant, Agent Paulson submitted a 40-page, 66-paragraph affidavit, which included complaints submitted to the Cyber Tip Line of the National Center for Missing and Exploited Children ("NCMEC") by Yahoo!, an Internet service provider ("ISP"), regarding pictures containing child pornography and erotica that were uploaded to eight Yahoo! e-groups. NCMEC is a national clearinghouse that gathers information about missing and exploited children for law enforcement use and receives information from various ISPs through the Cyber Tip Line.

In his affidavit, Agent Paulson explained that his investigation was based on complaints from NCMEC and his own records check. He included general information

about child pornography, including the relevant statutes and definitions; background information about his eleven-year tenure with the FBI and his relevant training and experience apprehending child pornographers; and expert information regarding the habits of child pornographers. Agent Paulson also indicated that, as a result of his training and experience with the FBI, he knew that computers are used by individuals who exploit children—including collectors of child pornography—to correspond with other like-minded individuals through email, chat rooms, electronic bulletin boards, and Internet file transfers. He noted that evidence of an online storage account is often found on the home computer of a user subscribing to an Internet service.

Agent Paulson also discussed the structure of Yahoo! e-groups in his affidavit, explaining that some groups specialize in child pornography. He then described each Cyber Tip submitted to NCMEC regarding the Yahoo! ID "jackinpulpit2001" and the email address "jackinpulpit2001@yahoo.com." The Yahoo! ID is a unique identifier of a user's account, and an ID, along with a password, is required in order to use Yahoo!'s services. Between August 15, 2003, and January 28, 2004, NCMEC received nineteen Cyber Tips that the user with the "jackinpulpit2001" ID uploaded sixty-nine images to different Yahoo! e-groups, pictures that Agent Paulson identified as both child pornography and child erotica. Agent Paulson included descriptions of each image in the affidavit and information provided by NCMEC Analyst Lisa Stenzel. Stenzel opined that ten of the nineteen Cyber Tips contained child pornography, while the other nine

Cyber Tips constituted "erotica/nudism/BoyLove." Stenzel
reported that one of the tips contained five images of
previously identified child victims.

The affidavit also contained information regarding the
account and subscriber information for "jackinpulpit2001,"
connecting the Yahoo! ID to Prideaux-Wentz. On Septem-
ber 4, 2003, a subpoena was served on Yahoo! and America
Online ("AOL"), another ISP, requesting account sub-
scriber information for "jackinpulpit2001." In response
to this request, AOL provided the name "Gary Wentz" and
an address in Belleville, Wisconsin. Agent Paulson later
confirmed that "Gary Wentz" was the same individual as
Gary Prideaux-Wentz, who had resided at the Belleville,
Wisconsin address since 1991. Agent Paulson also deter-
mined that Prideaux-Wentz and Timothy J. Galbraith
moved to New Glarus, Wisconsin in November 2004, and
that both had email accounts and a computer at the
new residence.

In the affidavit, there was also a description of a NCMEC
Cyber Tip that Microsoft/MSN submitted on September 7,
2002, indicating that it had disabled an account because
the account contained child pornography. The screen
name of the user of the account was "Germo" and the
account associated with the email address was
"whuzyurdade@aol.com." Agent Paulson was able to
trace this account to Prideaux-Wentz.

Agent Paulson also provided information in the affidavit
regarding "child pornography collector characteristics,"
which was based on his own experience along with expert
opinions from other FBI agents in the field. Agent Paulson

explained that "[c]hild pornography collectors almost always maintain and possess their material in the privacy and security of their homes or some other secure location where it is readily available." Furthermore, because the collection reveals the otherwise private sexual desires of the collector and represents his most cherished sexual fantasies, "the collector rarely, if ever, disposes of the collection." Agent Paulson noted that while collectors may refine their materials over time, the overall size of their collections tends to increase.

Based on this information, the magistrate judge issued a search warrant, which was executed at Prideaux-Wentz's residence in New Glarus on February 2, 2006. On April 19, 2007, Prideaux-Wentz was indicted for one count of possession of child pornography. He filed a motion to quash the search warrant and to suppress the evidence seized pursuant to the warrant, requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and claimed that the good faith exception did not save the warrant. The magistrate judge recommended that the district court deny Prideaux-Wentz's motions, finding that there was ample probable cause to support the warrant and that the good faith doctrine applied if there was no probable cause.

Prideaux-Wentz filed timely objections to the magistrate judge's recommendation and raised one new argument based on a non-precedential order, *United States v. Doan*, 245 Fed. Appx. 550 (7th Cir. 2007) (unpublished order). The district court distinguished *Doan*, denied Prideaux-Wentz's motions in their entirety, and entered an order adopting the magistrate judge's Report and Recommendation.

On August 15, 2007, Prideaux-Wentz pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4), but he reserved the right to appeal the district court's denial of his motion to suppress. He was sentenced to 72 months in prison and now appeals.

## II. ANALYSIS

### A.  There was no probable cause for the search.

Prideaux-Wentz maintains that the search warrant did not establish probable cause because Agent Paulson's affidavit relied on stale information, was unreliable, contained only general characteristics of child pornographers and nothing specific to Prideaux-Wentz, and did not demonstrate a sufficient nexus between the alleged criminal activity and his new residence. Prideaux-Wentz also contends that because the warrant affidavit lacked probable cause and was based on misleading information, he was entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Here, the magistrate, rather than the district court, determined that probable cause existed to support the search warrant. Recently, we clarified the appropriate standard of review that applies in determining the sufficiency of a search warrant issued in these circumstances. In *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008), we held that reviewing the sufficiency of a warrant "should not take the form of de novo review," and "on the mixed question whether the facts add up to 'probable cause' under the right legal standard, we give no weight

to the district judge's decision—for the right inquiry is whether the judge who issued the warrant (rarely the same as the judge who ruled on the motion to suppress) acted on the basis of probable cause. On that issue we must afford 'great deference' to the issuing judge's con-clusion." *Id.* Therefore, since the district court adopted the magistrate's findings, we pay "great deference" to the magistrate's determination of probable cause. *See id.*

Applying this standard, we find that the warrant lacked probable cause because the evidence that Agent Paulson relied on in his warrant affidavit was stale. While "[t]here is no bright-line test for determining when information is stale," *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993), the warrant does not indicate when the pictures were uploaded to the Yahoo! e-groups, and there is no way to discern this fact from the record. We have sug-gested that the staleness argument takes on a different meaning in the context of child pornography because of the fact that collectors and distributors rarely, if ever, dispose of their collections. *See United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (citing "expert information" in an affidavit that "pornographers tend to maintain their collections of material for long periods, usually at home").

Nevertheless, there must be some limitation on this principle. While staleness arguments have been rejected relative to evidence accumulated more than one year before the execution of the search warrant, *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005), in *Newsom* the government also had other, more recent evidence of continuing criminal activity to bolster probable cause

and freshen the older information. 402 F.3d at 783 (where police did not base the search warrant on the year-old pornographic images alone but also relied on the recent discovery by the defendant's girlfriend of a pornographic tape of her minor daughter); *see also United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (evidence defendant possessed child pornography thirteen to fifteen months previously not stale where supported by evidence of additional mailings within two months of warrant's execution).

However, the record here suggests that the images could have been uploaded as many as two years before the Cyber Tips were received, which would mean that the information was at least four years old by the time the government applied for a warrant. Unlike *Newsom*, there is no new evidence to "freshen" the stale evidence. Although we decline to find that evidence that is two to four years old is stale as a matter of law, *cf. United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (child pornography two years old not stale); *United States v. Riccardi*, 405 F.3d 852, 860-61 (10th Cir. 2005) (five years); *see also United States v. Peden*, 891 F.2d 514, 518-19 (5th Cir. 1989) (finding that a warrant based on a two-year-old delivery from suspected child pornographers and an eight-year-old conviction for solicitation of a minor was not stale), the government's failure to find out the dates in which the pictures were uploaded supports a finding of staleness in this case because it could have easily obtained this information by contacting Yahoo!. The government concedes that the upload information was available for at least two of the Yahoo! e-groups, information which it could have accessed following Yahoo!'s Compliance Guide for Law

Enforcement. The four year gap, without more recent evidence, undermines the finding that there was probable cause that the images would be found during the search. Therefore, we find that the evidence relied on to obtain the warrant here was stale, and the warrant lacked probable cause.

## B.　The warrant is saved by the good faith exception.

Even in the absence of probable cause, a warrant can "be saved by the good faith exception." *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005). "Whether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant is a legal question which we review de novo." *United States v. Harju*, 466 F.3d 602, 604 (7th Cir. 2006). "An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith." *Olson*, 408 F.3d at 372 (citing *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)). However, a defendant may rebut this evidence, "if the issuing judge 'wholly abandoned his judicial role' and failed to perform his 'neutral and detached function,' serving 'merely as a rubber stamp for the police' or . . . the affidavit submitted in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 914, 923 (1984)).

Prideaux-Wentz argues that a reasonable officer would have known that the warrant affidavit was lacking in probable cause because the affidavit establishes that Agent Paulson was inexperienced in evaluating child

pornography, there was no foundation to rely on the behavior profile assertions, the evidence was stale, and the affidavit omitted material information that would have led a reasonably well-trained officer to know that more information was needed to establish probable cause. Although we have found that the absence of any time element renders the evidence stale, Prideaux-Wentz has failed to rebut the presumption that Agent Paulson was acting in good faith by relying on the warrant. Further-more, he has not met the high standard required for a *Franks* hearing.

1.  **The warrant affidavit establishes Agent Paulson's reliability and expertise in evaluating child pornog-raphy.**

Prideaux-Wentz maintains that the affidavit and warrant did not establish Agent Paulson's reliability and expertise in describing and evaluating pornographic images. To support this point, Prideaux-Wentz relies on the fact that Stenzel, the NCMEC expert, disagreed with Agent Paulson's classification of some of the images as child pornography. This argument need not detain us long. Although Stenzel disagreed with Agent Paulson about the classification of several of the images, this disagree-ment was not based on Agent Paulson's perceived inexpe-rience, but rather because it is often difficult to distin-guish between child pornography and child erotica. Since Agent Paulson included a detailed description of each image, the magistrate judge was able to make his own determination about how to classify the images, ultimately

concluding that eleven of the images constituted child pornography. *See United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008) (holding that an issuing court can rely on a verbal description of images rather than the actual images to determine whether there is probable cause that the images constitute child pornography).

Moreover, the warrant affidavit sufficiently established Agent Paulson's expertise and reliability because the affidavit was extremely detailed, explaining the child pornography and child erotica images in the Cyber Tips, the relevant statutory provisions, expert opinions regarding the behavior of child pornographers generally, and Agent Paulson's experiences with pornography-related searches. Based on these statements, we find that the affidavit sufficiently establishes Agent Paulson's expertise in evaluating child pornography. *See United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007) (concluding that the affidavit sufficiently established the officer's expertise where the officer explained, in great detail, his experience with investigating child pornographers).

**2. There was sufficient evidence to link the boilerplate statements regarding child pornographers to the specific characteristics of Prideaux-Wentz.**

Prideaux-Wentz argues that there was no information in the affidavit to indicate that he is a collector of child pornography, only boilerplate statements about child pornography collectors generally. In order to rely on profiles, "the affidavit must lay a foundation which shows

that the person subject to the search is a member of the class." *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990) (holding that the affidavit did not establish probable cause that the defendant was a child molester when it was "clear that the 'expert' portion of the affidavit was not drafted with the facts of this case or this particular defendant in mind"). Furthermore, " '[r]ambling boilerplate recitations designed to meet all law enforcement needs' do not produce probable cause." *United States v. Zimmerman*, 277 F.3d 426, 433 n.4 (3d Cir. 2002) (quoting *Weber*, 923 F.2d at 1345). Prideaux-Wentz maintains that the warrant lacked any information that would indicate that he has the characteristics of a prototypical child pornography collector, and furthermore, that this gap renders any probable cause determination entirely unreasonable.

Agent Paulson's affidavit did include general statements about collectors of child pornography and their usual behavior, specifically "child pornography collector characteristics" gleaned from his own experiences, as well as from consultation with FBI agents who are experts in the field. He explicitly concluded that "[c]hild pornography collectors almost always maintain and possess their material in the privacy and security of their homes or some other secure location where it is readily available" and that the size of their collections tends to increase over time. Prideaux-Wentz maintains, however, that Agent Paulson did not rely on any of Prideaux-Wentz's specific characteristics in concluding that he fits the profile of a collector of child pornography and was therefore likely to keep pornography at his residence.

The Fourth Amendment requires a "fair probability" that the evidence will be found on the premises, which is undermined by the need to make inferential steps between general characteristics and the specific facts of the case. *See Weber,* 923 F.2d at 1345 (noting that there was no probable cause when, following each inferential leap made by the officer, "virtual certainty became probability, which merged into possibility, which faded into chance"). Because the warrant connected Prideaux-Wentz to several email accounts responsible for uploading or possessing child pornography, we cannot say that it required too much of an inferential leap to conclude that Prideaux-Wentz might be a collector of child pornography. There was a bridge connecting the general averments contained in Agent Paulson's affidavit to Prideaux-Wentz: jackinpulpit2001. The user name "jackinpulpit2001" was tied to Prideaux-Wentz and this ID was responsible for uploading a fair number of child pornography images. Furthermore, there was also an additional NCMEC Cyber Tip from Microsoft/MSN supporting Agent Paulson's contention that Prideaux-Wentz might be a collector of child pornography. Thus, despite the general, boilerplate language contained within the warrant affidavit, there were enough specifics to suggest that Prideaux-Wentz might be a collector of child pornography.

3.  **There was a sufficient nexus between Prideaux-Wentz's residence and the alleged criminal activity that Agent Paulson reasonably relied on the search warrant.**

Prideaux-Wentz also maintains that there was no nexus between the illegal activity and the search of his residence because Yahoo! submitted the last Cyber Tip ten months before he moved to the New Glarus home in November 2004. He contends that the warrant application did not assert that he posted any images from his new residence. We have previously held that "a finding of probable cause 'does not require direct evidence linking a crime to a particular place.'" *Watzman*, 486 F.3d at 1008 (internal citation omitted). "Judges 'may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.'" *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)).

Agent Paulson reasonably relied on the search warrant because there was a sufficient nexus between the uploaded images and Prideaux-Wentz's New Glarus home. Agent Paulson established that Prideaux-Wentz owned a computer and subscribed to email services in his new home. The warrant affidavit included subpoenaed information from a telecommunications company, indicating that Prideaux-Wentz opened an Internet account at the time he moved to New Glarus. His credit card records also showed that he made regular monthly payments to America Online. Although the nexus certainly would be stronger if Yahoo! had submitted a Cyber Tip after Prideaux-Wentz moved to his New Glarus home, Agent Paulson still could have reasonably believed, based on Prideaux-Wentz's computer usage and the fact that most child pornographers do not dispose of their collections, that it was likely that illegal pornographic images would

be found on Prideaux-Wentz's computer. *See Summage*, 481 F.3d at 1078 (upholding a search of the defendant's new home, although pornographic photos and videos were taken at his old home, because it was reasonable to infer that he would maintain the materials after his move); *see also Newsom*, 402 F.3d at 783 (where the affidavit did not explain that child pornographers tend to hold onto their stashes but we determined that "it was clear from the context" that the law enforcement officials seeking the warrant believed that the defendant was still in possession of materials that were more than one year old.).

To counter this point, Prideaux-Wentz, relying on *United States v. Greathouse*, 297 F. Supp. 2d 1264, 1272 (D. Or. 2003), contends that the magistrate failed to consider that computers commonly are replaced in short periods of time. Although the warrant did not indicate whether Prideaux-Wentz owned the same computer at both residences, the government is not required to prove that Prideaux-Wentz owned the same computer between residences in order to establish probable cause. *See United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) ("[p]robable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense.") (internal citation omitted). Given Prideaux-Wentz's connection with two Internet IDs responsible for uploading and storing child pornography, and the expert testimony suggesting that he would not discard these photos, Prideaux-Wentz has not convinced us that Agent Paulson did not act in good faith reliance on the search warrant.

**C.  Prideaux-Wentz was not entitled to a *Franks* hearing.**

Prideaux-Wentz argues that he has met the standards for a *Franks* hearing because the warrant affidavit contained omissions and was misleading. Under *Franks*, "if a defendant can demonstrate by a preponderance of the evidence that the signatory of the warrant affidavit made a false statement (or omitted a material fact) either intentionally or with reckless disregard for the truth, then a court will consider whether the content of the affidavit, setting aside the false material (or including the omitted material), is sufficient to establish probable cause." *United States v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004). In order to receive a *Franks* hearing, Prideaux-Wentz has to show that "(1) the warrant affidavit contained a false statement or omitted a statement; (2) the affiant made or omitted the statement either intentionally or recklessly; and (3) the statement was material or necessary to the finding of probable cause." *Id.* at 1010. Prideaux-Wentz maintains that Agent Paulson omitted certain facts, including that Prideaux-Wentz's credit card statements did not contain charges for access to any Internet sites and that he never communicated with anyone by any medium about anything related to child pornography. Prideaux-Wentz also contends that there are inconsistencies between Agent Paulson and Stenzel's evaluations of the uploaded pictures that raise concerns about the reliability of the affidavit generally.

We have already rejected the idea that Agent Paulson and Stenzel's differing interpretations of the pictures undermined the reliability of the affidavit, and we also do

not believe that Agent Paulson's characterization of the photos was intentionally misleading, especially given the somewhat hazy line between child erotica and child pornography. Even if Agent Paulson should have somehow been more thorough or careful in his analysis of the photos, or if, as we determined earlier, he should have followed-up with Yahoo! to get more information about the uploaded photos, this failure was, at most, negligent, which is insufficient to trigger a *Franks* hearing. *See United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000) (rejecting the defendant's argument that the officers should have conducted more investigation and included more information with the warrant because their failure to do so was, at most, negligent and "negligence is no basis for convening a *Franks* hearing").

There is information contained within the warrant to suggest that Agent Paulson reasonably believed that Prideaux-Wentz would still be in possession of child pornography, and that the omissions were not material to the finding of probable cause. In addition to the general information about child pornographers contained in the warrant, the Cyber Tips obtained from August 15, 2003, to January 28, 2004, indicate that Prideauz-Wentz was consistently uploading child pornography and engaging in "ongoing continuous criminal activity." *See United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992) ("Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity."). Moreover, there was substantial evidence linking Prideaux-Wentz to the uploaded images through his Internet IDs.

This evidence, which is quite compelling, suggests that the omissions regarding Prideaux-Wentz's credit card statements, and the fact that there was no evidence linking Prideaux-Wentz to other child pornographers, were not necessary to a finding of probable cause. Thus, while Agent Paulson's failure to obtain the dates of the uploaded pictures is problematic, it is clear that the warrant was not so facially deficient as to justify a finding that Agent Paulson omitted information intentionally or recklessly. We find that Prideaux-Wentz has not shown that he was entitled to a *Franks* hearing.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the denial of the motion to suppress the evidence.