UNITED STATES of America,
Plaintiff,

v.

Daryle Lamar COSTELLO, Defendant.

Case No. 08–20315.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 29, 2009.

Matthew A. Roth, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH SEARCH WARRANT AND DISMISS CHARGES

DAVID M. LAWSON, District Judge.

The defendant's motion to quash a search warrant and suppress child pornography found during the search of his computer presents the following question: Does evidence that the defendant subscribed to a website that furnished illegal pornographic images in April 2007 establish a fair probability that those images would be found on his computer in May 2008, where the defendant moved his residence in the interim? In other words, is the information in the government's affidavit too stale to support the issuance of a warrant to search the defendant's computer under the circumstances of this case? Although the defendant presents a strong argument in support of suppression, the Court believes that the affidavit contains enough information that describes the enduring nature of electronically stored information, the tendency of persons who gather child pornography to collect and keep it, a connection between that tendency and the defendant's conduct, and the absence of any evidence suggesting that the defendant disposed of his computer or storage media, to support a conclusion that contraband would be found on the defendant's computer thirteen months after he last paid for his subscription to a website that offered unlimited access to child pornography. Therefore, the defendant's motion to quash the search warrant and suppress the fruits of the search will be denied.

## I.

The search warrant the defendant challenges here was issued on May 2, 2008 by a federal magistrate judge and authorized the search of the defendant's residence, vehicles, adjacent structures, and all containers that could contain child pornography. The search warrant was supported by a 44–page affidavit (including attachments) signed by Immigration and Customs Enforcement (ICE) agent Renaldo Franklin, which is summarized below.

Although the affidavit is rather lengthy, the allegations relating specifically to the defendant are not. Much of the affidavit contains boilerplate language reflecting the information accumulated by federal agents around the country who have investigated child pornography cases, and it describes the methods of downloading and storing pornographic images from the Internet, the habits of child pornography collectors, and the use of computers to generate,

transmit and store digital images. The affidavit also describes two investigations into child pornography distribution organizations, and the manner by which the defendant was associated with paid subscriptions to these distribution sites.

There are two websites that were implicated during the investigation of Mr. Costello. The first website was labeled "Illegal.CP," which, according to the affidavit, "was a child pornography website, that contained only child pornography and charged $79.99 for a twenty[-]day subscription." Aff. ¶ 13. According to the affidavit, agents previously had executed a search warrant at "JetPay"—which presumably refers to JetPay Merchant Services, an Internet clearinghouse that facilitates credit card payments for online purchases—and obtained information that:

> an individual with the name Daryle COSTELLO successfully purchased access to the "Illegal CP" website on or about 03/19/2006: Furthermore, that data reflected that COSTELLO used a Visa credit card with the account number [redacted] to make the purchase to the "Illegal CP" website. The address of 7960 N. Fountain Park, Apt. 151, Westland, MI 48185 was listed by COSTELLO when making the purchase.

Aff. ¶ 16. These agents also discovered that "an individual employing the e-mail address of darylelamar@yahoo.com had attempted to subscribe to the 'Illegal CP' website on or about 03/19/06." *Id.* at ¶ 17. A summons issued to Yahoo, Inc., a commercial Internet service provider, in March 2007 revealed the Internet Protocol (IP) address when the account was created and the IP address when the account was last accessed were attributable to WOW Internet Services, Costello's Internet service provider. In response to a summons in December 2007, WOW provided information that indicated that the IP address

was registered to the defendant. Costello's credit card billing information was obtained in June 2007; a charge for $79.99 appeared in his account, and the designation for the charge, AD–SOFT, was associated with Illegal.CP. This evidence was somewhat equivocal, however, because "the charge was disputed as the credit card was reported lost and/or stolen and the amount of the charge was credited back to COSTELLO'S new Visa credit card account. . . ." Aff. at ¶ 18.

The second website is identified as "Home Collection," which in turn offers subscriptions to twenty-three websites, including "HL Package/Hardlovers Paysite" (or "HL Package" for short). The affidavit describes the "HL Package:"

> The member restricted website associated with the subject identifiers Hardlovers Paysite and HL Package is known as "Hard Lovers." . . . There were numerous galleries contained within the "Pictures" and "Video" sections. A partial capture of the member restricted website was obtained to include the entire subdirectory entitled "Baby;" under the "Pictures" section. In addition, within the subdirectory "Girls" under the "Pictures" section images from the following two galleries were captured: "Sabban" and "Vicky." Several of the images depicted lascivious displays of the female minors' genitalia. In numerous images the female minors were engaged in sexually explicit conduct with adult males. The images were submitted to NCMEC. Of the approximately 1,980 images submitted to NCMEC, NCMEC was able to identify 570 images that depicted victims previously identified by law enforcement investigations.

Aff. ¶ 29. Law enforcement agents purchased access to the website twelve times between late October 2006 and late January 2007.

On December 12, 2006, an individual identified as Daryle Costello, using the e-mail address darylelamar@yahoo.com, made a payment via PayPal (another Internet payment clearinghouse) in the amount of $94.95 from an IP address registered to Daryle Costello. The payment was made to an e-mail address associated with Home Connection for the HL Package/Hardlovers Paysite. This charge also was disputed by Costello. But on April 23, 2007, Costello made a payment to PayPal account webfs@email.com for HL Package, using e-mail address darylelamar@yahoo.com, and an IP address registered to WOW Internet Services. This charge was not disputed by Costello.

According to the affidavit, on December 27, 2007, in response to a summons, Yahoo informed federal agents that the most recent logon to Costello's e-mail account was on December 12, 2007, from an IP address 69.14.174.234, another logon on February 2, 2007 was 69.14.48.119, and the registration in 2004 was from IP address 69.14.105.60. All of these IP addresses were registered to WOW Internet Services. On December 28, 2007, a representative from WOW Internet Services confirmed that all three of the IP addresses were registered to Daryle Costello and his address in Westland, Michigan.

On February 28, 2008, the defendant changed his address with the United States Postal Service to an apartment in Novi, Michigan. Aff. ¶ 35. Surveillance on March 27, 2008 verified that the defendant was at this residence.

On March 19, 2008, a grand jury subpoenaed credit card information regarding the accounts used to purchase the subscriptions to the HL Package. On April 10, 2008, the agents received the subpoenaed information showing that Costello's credit card was charged $94.95 to PayPal on December 13, 2006, which was disputed and the card was reported stolen. On April 24, 2007, Costello's card was again charged $94.95 to PayPal, and "this charge was not disputed and not indicated as lost or stolen." Aff. ¶ 38.

Information was again summoned from Yahoo on March 3, 2008, which on April 17, 2008 indicated that the e-mail address darylelamar@yahoo.com was last accessed on March 6, 2008 from an IP address belonging to Bright House Networks. An April 7, 2008 summons to Bright House Networks revealed that the IP address was assigned to Daryle Costello at the Novi address at the relevant time.

Federal agents executed the search warrant on May 8, 2008. The defendant's computer was seized and its hard drive was analyzed. Approximately two hundred images of child pornography were identified on the disk. After the search warrant was executed, the defendant was arrested and made some incriminating statements. A grand jury returned an indictment charging the defendant with three counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). The motion to quash the search warrant eventually followed, and later the grand jury returned a second superseding indictment deleting one count of receipt of child pornography and adding a count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5).

## II.

■ The defendant argues that Renaldo Franklin's affidavit is insufficient to establish probable cause to issue the search warrant because there is no direct information that the defendant actually downloaded child pornography, and the information that associated him with the child pornography websites is stale. The staleness argument stems from the thirteen-month gap between the defendant's sub-

scription to HL Package/Hardlovers Paysite on April 23, 2007 and the issuance of the search warrant on May 2, 2008. The defendant points out that during that period, there were no other suspect purchases, no mailings intercepted, no other allegations of continuing deviant behavior, and he moved from Westland (where the HL Package subscription was purchased) to Novi (where the search warrant was executed). The defendant argues that there is no basis to conclude that he brought with him the computer on which pornographic images were downloaded originally, and there otherwise is no nexus between his Novi residence and the alleged illegal activity. Although the defendant seems to concede that there was probable cause to conclude that he possessed child pornography in April 2007 in Westland, he insists that the affidavit is insufficient to show that he possessed the contraband thirteen months later in Novi.

■■■ Under the command of the Fourth Amendment, applicable to the States as incorporated into the Fourteenth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude" that probable cause exists. *United States v. Williams,* 224 F.3d 530, 532 (6th Cir.2000) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also United States v. Grubbs,* 547 U.S. 90, 94–95, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006). On the continuum between doubt and certainty, "[p]robable cause arises if there are 'reasonable grounds for belief,

supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee,* 434 F.3d 887, 892 (6th Cir.2006) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990)). The test for probable cause calls for an assessment of whether there is "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991) (quoting *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985)). A magistrate properly reaches this conclusion only when the warrant affidavit sets forth sufficient facts that provide a "'substantial basis' for concluding that 'a search would uncover evidence of wrongdoing.'" *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317). As the Sixth Circuit has explained, the concept of probable cause is not easily reducible to a simple formula:

> Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. This determination does not lend itself to the application of rigid legal rules.... Rather, the probable cause standard is a practical nontechnical conception wherein we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Stated otherwise, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*United States v. King,* 227 F.3d 732, 739 (6th Cir.2000) (citations omitted). To encourage law enforcement officers to seek warrants, the Supreme Court has coun-

seled that in close calls, doubtful warrants should be upheld. *Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. 2317. And "'reviewing courts are to accord the magistrate's determination 'great deference.'" *United States v. Allen,* 211 F.3d 970, 973 (6th Cir.2000) (en banc) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317).

■ Of course, "[t]here must ... be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters,* 163 F.3d 331, 336–37 (6th Cir.1998)). But "[p]robable cause is described as a fair probability—not an absolute certainty—that evidence of the crime will be found at the location." *United States v. Martin,* 526 F.3d 926, 936 (6th Cir.2008) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. 2317).

■ The defendant's argument that probable cause was lacking can be addressed in two phases: first, whether there was probable cause that child pornography would be found on the defendant's computer in May 2008; and second, whether there was probable cause that the computer would be found then at his new residence in Novi. Both of these arguments implicate the concept of staleness. Commentators have noted that probable cause to search "is concerned with facts relating to a presently existing condition." W. LaFave, Search and Seizure § 3.7 at 338 (3d ed. 1996). Consequently, there arises the "unique problem of whether the probable cause [that] once existed has grown 'stale.'" *Id.* at 339; *see also United States v. Jackson,* 470 F.3d 299, 308 (6th Cir.2006) (" '[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location.'") (quoting *United States v. Abboud,* 438 F.3d 554, 572 (6th Cir.2006)). The Supreme Court has

stated that the resolution of such questions, like the determination of probable cause itself, "must be determined by the circumstances of each case." *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932). In *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998), the Sixth Circuit suggested four considerations that a reviewing court might take into account when assessing a staleness claim:

the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id.* at 923. The issue is to be resolved not by arbitrarily counting days on a calendar, but rather by determining whether the information offered in the affidavit, taking into account both its age and any corroboration, suffices to establish probable cause to search a particular place. *Id.* at 923–24.

Turning to the first part of the inquiry, there seems to be little question that the affidavit establishes probable cause to believe that the defendant downloaded child pornography around the time of his paid subscription to the illegal site in April 2007. The reasoning that leads to that conclusion was tracked in *United States v. Terry,* 522 F.3d 645, 648 (6th Cir.2008):

The government's affidavit established that (1) the AOL e-mail account belonging to the "skippie4u" screen name sent two e-mail messages at approximately 2:30 a.m. containing a known child pornography image; (2) Brent Terry was the registered user of the "skippie4u" screen name; (3) Brent Terry lived at 16 Walnut Street at the time the e-mail messages were sent; and (4) Brent Ter-

ry had a computer at that address through which he accessed the "skippie4u" e-mail account used to send the messages. It requires no great leap of logic to conclude that the computer in Terry's home was probably used to send the intercepted messages.

*Id.* at 648. The *Terry* court quoted approvingly the district court's conclusion that " 'as a matter of plain common sense, if ... a pornographic image has originated or emanated from a particular individual's email account, it logically follows that the image is likely to be found on that individual's computer or on storage media associated with the computer.' " *Ibid.*

In this case, no images were intercepted. But the affidavit established that the defendant paid $94.95 for the privilege of downloading child pornography, and having paid that fee it is fairly probable that he availed himself of the download opportunity. That premise was endorsed in *United States v. Wagers*, 452 F.3d 534, 539 (6th Cir.2006) (affirming the finding of probable cause to search the defendant's home where the defendant lived at the address searched, the defendant purchased a subscription giving him access to a child pornography website, but the credit card used to complete the purchases had the billing address as the defendant's office address, not his residence).

The defendant argues that these facts do not show any likelihood that those images remained on his computer for thirteen months. The cases that hold otherwise focus primarily on the nature of the crime, and trumpet the theme that subscribers to child pornography websites often collect and hoard images, preserving them for several months. *See, e.g., United States v. Prideaux–Wentz*, 543 F.3d 954, 958 (7th Cir.2008) (noting that courts "have suggested that the staleness argument takes on a different meaning in the context of child pornography because of the fact that collectors ... rarely, if ever, dispose of their collections"). However, the Seventh Circuit cautioned that "there must be some limitation on this principle." *Ibid.*; *see also United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997) ("We are unwilling to assume that collectors of child pornography keep their materials indefinitely. . . ."). Most of the cases cited by the government relying on the idea that child pornography recipients tend to hoard collections dealt with a period substantially less than in this case. *See, e.g., United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir.2008) (111 days); *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007) (three months); *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir.2006) (en banc) (four months); *United States v. Shields*, 458 F.3d 269, 272 (3d Cir.2006) (in a case without a staleness argument, relying on information that was eight months old); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir.2002) (four months); *United States v. Lacy*, 119 F.3d at 746 (ten months); *United States v. Ricciardelli*, 998 F.2d 8, 9–10 (1st Cir.1993) (thirty minutes); *United States v. Tanner*, 2008 WL 451021, at *2 (W.D.Ky. Feb. 15, 2008) (three months); *United States v. Shackleford*, 2007 WL 403627, at *6 (E.D.Ky. Feb. 1, 2007) (eight months); *United States v. Miller*, 450 F.Supp.2d 1321, 1335 (M.D.Fl. 2006) (holding that search was consensual, but noting that information that was four months old was not stale). Those cases that have found probable cause despite a delay of years also included additional information, such as a prior conviction or ongoing suspicious conduct. *See, e.g., United States v. Irving*, 452 F.3d 110, 125 (2d Cir.2006) (child pornography subscription two years old was not stale when coupled with evidence of prior conviction related to child exploitation); *United States v. Noda*, 137 Fed.Appx. 856, 862

(6th Cir.2005) (fourteen month old information was not stale when coupled with evidence that 1) a month before, someone at the defendant's home attempted to get a fourteen year-old female drunk to have sexual relations with her and 2) an informant visited the defendant's home one week prior to the search warrant and was told that they had "missed out on a lot of new pictures"); *United States v. Riccardi,* 405 F.3d 852, 860–61 (10th Cir.2005) (holding that five-year-old Kinko's receipt, when coupled with ongoing sexual harassment of young men, was sufficient); *United States v. Newsom,* 402 F.3d 780, 783 (7th Cir. 2005) (one-year-old information was not stale when coupled with the recent discovery of a videotape of a minor).

Based on this survey of cases, the thirteen-month gap appears to be at the outer limits tolerated by the courts in cases of this type. However, after the oral argument of the present motion, the Sixth Circuit decided *United States v. Paull,* 551 F.3d 516 (6th Cir.2009), in which the defendant, convicted on his conditional guilty plea to possession of child pornography, attacked a search warrant that was based on an affidavit alleging that he purchased access to a pornographic website thirteen months prior to the search. The court rejected the challenge, reasoning as follows:

> Applying this approach to child pornography, we have reasoned that because the crime is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography. *See United States v. Wagers,* 452 F.3d 534, 540 (6th Cir.2006) ("[E]vidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely down-loaded, kept, and otherwise possessed the material.") . . . .

The affidavit in this case alleged that Paull subscribed to child pornography websites and that he continued to do so over the course of two years. Paull argues that these allegations are too generalized and remote to provide probable cause against him at the time of the search. But he does not dispute that the affidavit alleges that he was subscribing and downloading images from multiple sites. This makes the habits of similarly situated consumers of child pornography relevant. *See Lacy,* 119 F.3d at 746 n. 6 ("The affidavit in this case contained sufficient evidence that [the defendant] had downloaded computerized visual depictions of child pornography to provide a foundation for evidence regarding practices of possessors of such pornography."). For instance, one of the websites to which Paull subscribed was described as an "online-sharing-community" that was "created specifically for sharing child pornography collections." The affidavit's expert description of the barter economy in child pornography provides context for that subscription: Paull was likely involved in an exchange of images and he therefore is likely to have a large cache of such images in order to facilitate that participation. *Moreover, while Paull last purchased a subscription thirteen months prior to the search, the record is silent regarding how long it was for or whether it had indeed expired at the time of the search. Cf. Wagers,* 452 F.3d at 538–39 (upholding probable cause despite all three of the defendant's website subscriptions having lapsed prior to the government investigation). In light of the nature of the crime, these allegations are sufficient to establish a fair probability of on-going criminal activity.

*Paull*, 551 F.3d at 522–23 (emphasis added).

The affidavit in this case provides similar information. A computer associated with the defendant made contact with a child pornography website once in March 2006 and once in December 2006. He actually completed a subscription to a child pornography website in April 2007, which is described as a "member restricted website," Aff. ¶ 29, and which provided him with unlimited access to galleries containing hundreds of child pornography images. Unlike the "Illegal.CP" website, on which the defendant's subscription payment was reversed, there is no clear expiration date on the "HL Package/Hardlovers" website on which the subscription was completed. As in *Paull*, the time lapse between the subscription date and the affidavit date was thirteen months. The affidavit in this case contains a description of the habits of individuals who obtain child pornography, indicating a penchant for storing and collecting it. *See id.* at ¶ 42 ("Based on my previous investigative experience related to child pornography investigations … I have learned that many of the subscribers to the 'Illegal CP' website who were arrested during the first phase of Operation Emissary had saved numerous images to their hard drive or to discs or CDs, and had kept that material for long periods of time.").

On the other hand, there is little evidence that the defendant engaged in ongoing criminal activity. In fact, one could just as easily argue that the defendant had no need to hoard the illegal images given how readily he was able to access additional images in subsequent tries. *Cf. United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir.2008) (assuming that collectors of child pornography tend to hoard them because collection is difficult).

However, there is compelling information found in paragraph 43 of the affidavit that goes towards showing probable cause that the evidence still exists on the defendant's computer. That paragraph recites the information relayed by retired detective Steve Nelson. He stated that in "every case that [he] can recall" of individuals who had purchased a membership to a particular website, they still had the evidence on their computer, including ones where years had elapsed between the membership and the search of the computer. The assertion is not qualified with the ambiguous "many" or "most." What this is missing, of course, is any showing of similarity between the website investigated by Nelson and the websites subscribed to by the defendant. Nevertheless, the Court is satisfied that, even if the link was not explicitly identified by the affiant, one may assume that the subscribers of child pornography websites share certain characteristics, at least for the purpose of establishing probable cause. This paragraph of the affidavit therefore creates a fair probability that a) the defendant is similar to other individuals investigated; and b) these individuals retain images on their computer for years.

The Court finds, therefore, that under current Sixth Circuit law, the affidavit establishes a fair probability that the computer the defendant used to subscribe to the child pornography website in April 2007 contained child pornography images in May 2008.

There remains the question whether the affidavit established probable cause that the computer containing the contraband would be found at the place to be searched in Novi, since the defendant moved his residence several months after he subscribed to the pornography website. The mere fact that the defendant moved between his last subscription and the date of

the search warrant affidavit does not, by itself, defeat probable cause to search his new residence. There is reason to think that when a person moves, he would bring with him most of his possessions, including his computer, and, as a result, any illegal images stored on the hard drive. The law enforcement agents established that the defendant lived at the Novi address, and confirmed that he had access to the Internet and continued to use the same e-mail address, suggesting that he had a computer at his new residence.

■ The affidavit also recites that the defendant did not purchase another computer, yet continued to use a computer. This does not even begin to address whether the defendant may have deleted the files. Although often files can be recovered even after deletion has been attempted, the defendant may have found a way to permanently delete them. As the defendant observes, the affidavit states that "computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a booby trap)." Aff. ¶ 49b. Nevertheless, the government need only to establish "a fair probability—not an absolute certainty—that evidence of the crime will be found at the location." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir.2008) (citing *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

Consequently, the Court believes that the first factor noted in *United States v. Spikes* does not support a finding of staleness. Nor does the second factor—whether the subject of the investigation was "nomadic or entrenched." *Spikes*, 158 F.3d at 923. The affidavit indicated that the defendant is a relatively stable individual who leases an apartment. There is no indication that he is highly mobile or nomadic. Although he moved from one apartment to another, he took the time to fill out a change of address form with the post office, which is hardly indicative of a transient character. This consideration slightly favors a finding of probable cause.

The nature of the thing to be seized is a factor that somewhat overlaps with the discussion regarding nature of the crime, above. The thing to be seized—electronically-stored illegal images—has enduring value to its owner, according to the affidavit as discussed above. It is not something that deteriorates naturally, nor is there a strong incentive to consume it. This factor weighs against staleness.

Finally, the defendant's residence—the place to be searched—is where the crime is alleged to have occurred. It is hardly a secure operational base. Nevertheless, as explained above, the affidavit suggests that the nature of the crime alleged is such that evidence of it is likely to be, and continue to be, close to the defendant at his home. This factor does not weigh in favor of staleness.

The Court concludes, therefore, that the information in the affidavit was not so dated as to preclude the magistrate judge from finding probable cause that evidence of a crime would be found at the defendant's apartment in Novi.

### III.

This case presents a close question whether there was probable cause to believe that pornographic contraband would be found in the defendant's residence as of the date Mr. Franklin signed the search warrant affidavit. However, in light of Sixth Circuit precedent, the Court finds that the affidavit survives the defendant's staleness challenge and supports the magistrate judge's finding of probable cause.

Accordingly, it is **ORDERED** that the defendant's motion to quash the search

warrant and dismiss the charges [dkt. # 33] is **DENIED.**