NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2013
Decided February 11, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1675

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 12-CR-165 |
| JAMES L. VANDERKINTER | William C. Griesbach, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

After an acquaintance tipped authorities that James Vanderkinter illegally possessed several firearms, a sheriff's department investigator obtained and executed a search warrant on property that Vanderkinter rented for storage. Eight guns were found in a vehicle belonging to Vanderkinter that was parked on the property. Vanderkinter pleaded guilty in federal court to possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and to witness tampering, *id.* § 1512(b)(1). On appeal he challenges the denial of his motion to suppress the guns. He argues that his vehicle was outside the scope of the warrant, and even if it was included, the affidavit supporting the warrant did not establish probable cause to search the vehicle and no police officer reasonably could have believed otherwise. We reject these contentions.

Since the parties elected not to present live testimony, we draw the background facts from the investigator's reports and his affidavit supporting the search warrant. In June 2012 a woman named Gail contacted the sheriff's department in Kewaunee County, Wisconsin, to report that Vanderkinter, a felon, possessed several guns. Investigator Steve Haen interviewed Gail, who had lived with Vanderkinter for two months while separated from her husband. She had gone back to her husband the week before calling authorities but was scared of Vanderkinter and thus waited to turn him in until after he had reported to jail to serve a several-week sentence for drunk driving.

While she was living with Vanderkinter, Gail said, he had confided that he was storing guns at his "Uncle Jack's place" on Rockledge Road in Casco. "Uncle Jack" is Vanderkinter's friend John Bellin, who owns an 11-acre, rural property with a barn and outbuildings. Gail told Investigator Haen that an old, red "Jeep" was parked behind the barn. On one occasion, Gail reported, Vanderkinter had driven her by the property in his pickup and pointed to the barn as the place where he kept his guns. On another occasion, she continued, Vanderkinter had taken his eight-year-old son target shooting and admonished her not to tell anyone. Afterward he showed her videos on his cell phone of the shooting outing with his son.

Investigator Haen then went to the Rockledge Road property to take photos. While there, he saw the barn, multiple outbuildings, and a red or maroon sport-utility vehicle but no house. Haen also confirmed that John Bellin owned the property and that Vanderkinter twice had been convicted of felonies in Wisconsin.

Four days later an assistant district attorney helped Haen draft a search warrant and application. The application sought authority "to search the barn, outbuildings, and red/maroon SUV, now located at E2897 Rockledge Road, Town of Casco for evidence of a firearm." That same day Haen signed his application and supporting affidavit before a Kewaunee County circuit judge, who then issued the warrant authorizing authorities to search for firearms "upon certain premises in the Town of Casco, Kewaunee County, Wisconsin, a barn and accessory structures owned by John and Jeanette Bellin, more particularly described as a large old barn with a red/maroon SUV parked in the rear with accessory buildings located at E2897 Rockledge Road."

Before conducting the search, Investigator Haen confirmed with Bellin that Vanderkinter was paying him to store personal belongings at the Rockledge Road property and that Vanderkinter owned the maroon SUV. Haen and four other officers then executed the warrant. They observed through the SUV's windows that the rear

seat was folded down and that a blue tarp covered the cargo area. The vehicle had no license plates, but a check of the VIN confirmed Vanderkinter's ownership. The officers forced open a locked door and beneath the tarp found the eight guns, magazines, and several boxes of ammunition. They did not find any guns or other contraband in the barn.

After his indictment Vanderkinter moved to suppress the guns and ammunition on the grounds that the SUV was outside the scope of the search warrant and, regardless, Investigator Haen's affidavit did not establish probable cause to search the vehicle. The district court rejected both contentions. Moreover, the court reasoned, the search could be sustained for the additional reasons that Investigator Haen had acted in good faith when he obtained and executed the warrant, and that law enforcement officers generally may search a vehicle found on premises that a warrant authorizes them to search if the vehicle is owned by or under control of the person who is the target of the search. Vanderkinter pleaded guilty but reserved his right to challenge the suppression ruling on appeal.

In this court Vanderkinter presses his contention that the SUV was not among the premises that the warrant authorized to be searched. He also renews his alternative argument that the warrant application did not establish probable cause to search the SUV, and no reasonable officer could have believed that it did.

As Vanderkinter reads the warrant, the SUV is mentioned in the description of the property to be searched solely to help identify the barn. That construction makes little sense, and we agree with the district court that the vehicle was listed, like the outbuildings and the barn itself, as a place on the property where the guns might be found. The warrant identifies the location of the barn and other permanent structures by address and owner, and we cannot understand Vanderkinter's belief that a reference to a vehicle (that could be moved) was intended only to identify the property by distinguishing Bellin's barn and cluster of buildings from a neighbor's property. The warrant plainly says that the premises to be searched are "more particularly described as a large old barn with a red/maroon vehicle parked in the rear with accessory buildings." This description includes the outbuildings *and* the vehicle as places on Bellin's property to be searched.

We also reject Vanderkinter's contention that whether or not the SUV was included in the warrant, Investigator Haen's application for the warrant did not establish probable cause to search the vehicle. Vanderkinter emphasizes that Gail

mentioned only the barn as the storehouse for his guns, and she never told Haen specifically that the guns were in the vehicle. And for that reason, Vanderkinter insists, Haen so obviously lacked probable cause to search the vehicle that he could not rely in good faith on the warrant given him by the state judge. *See United States v. Leon*, 468 U.S. 897, 922–23 (1984); *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009); *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002).

Our review of this question is quite narrow. Where a warrant has issued, we are not concerned with the district court's assessment of whether the facts add up to probable cause but instead give great deference to the issuing judge's determination of probable cause. *United States v. Miller*, 673 F.3d 688, 692–93 (7th Cir. 2012); *United States v. Prideaux–Wentz*, 543 F.3d 954, 958 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). We conclude that Haen's affidavit established probable cause to search the SUV as well as the buildings at Uncle Jack's place. Vanderkinter's contrary argument assumes that Gail was speaking with lawyerly precision when she told Haen about the location of the guns. Gail reported that Vanderkinter had told her that he stored his guns "at his 'Uncle Jack's place.' " Since the barn is the most prominent structure at the site, Gail cannot be faulted for referring to the entire location as "the barn" in the same way that a person might describe the entire property on which he lives as his "home." By saying that he stored his guns at "Uncle Jack's place," Vanderkinter did not limit the likely location of the guns to the barn alone or make it less likely that the guns would be found in another outbuilding, the SUV, or somewhere else nearby on the grounds. *See United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir. 1987).

Moreover, Vanderkinter had admitted multiple times to Gail that he possessed guns, which they both knew he was not permitted to have. She had seen videos of him shooting his guns with his son and knew that he wanted to conceal his use of those guns from others. And since Vanderkinter did not own the barn and outbuildings at "Uncle Jack's place," his SUV likely was the only place there for which he enjoyed exclusive access, and it was reasonable to assume that he would store contraband in the most secure location on the premises. This is particularly likely since he would be incarcerated for three weeks serving a drunk-driving sentence and would be unable to assure the security and concealment of the guns during that time. This information would lead a reasonably prudent person to believe that a search of the SUV would uncover contraband or evidence of a crime. *See United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009). In establishing probable cause, Haen was permitted to make reasonable inferences based on his training and experience. *See United States v. Richards*,

719 F.3d 746, 754 (7th Cir. 2013); *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). Investigator Haen presented to the state judge all of the information obtained from Gail and from his own investigation, and we agree with the judge's conclusion that those facts added up to probable cause to search for guns in Vanderkinter's vehicle. *See McIntire*, 516 F.3d at 579.

Vanderkinter's reading of the search warrant and affidavit is unreasonably narrow. Given that we agree with the district court that the warrant expressly authorized a search of the vehicle and that the application for the warrant established probable cause for that search, we need not reach the argument about good faith reliance on the warrant. Although we have no quarrel with the remainder of the district court's thorough order, we need not discuss other, alternative grounds for upholding the search. The guns were found where the police were authorized to search, and accordingly, the judgment is AFFIRMED.